[Civ. No. 13660. Second Dist., Div. One. Sept. 4, 1942.]

## CONSUELO ANDRADE, Respondent, v. GEORGE W. NEWHOUSE, Appellant.

Melvin Simon, David Licker and Alexander L. Oster for Appellant.

DeForrest Home for Respondent.

WHITE, J.—The plaintiff and respondent, Consuelo Andrade, is the natural mother and parent of George Winfred Andrade and Mario Henry Andrade, minors. Plaintiff brought this action on behalf of said minors, against defendant and appellant, George W. Newhouse, to establish the paternity of said children. After trial before the court sitting without a jury, the court made findings determining that the defendant was the father of the minors, and judgment was entered accordingly. The judgment also provided for the support of said minors and for attorney's fees for plaintiff's attorney in the sum of $600, and court costs of $50. The judgment further provided for medical and hospital expenses incurred by plaintiff at the birth of said two children in the sum of $250 and "the additional sum of $10 per month for the plaintiff herein for her care of said children while she is not working." Respondent concedes the error of this last award, as well as the award for medical and hospital expenses, and at the oral argument of this cause consented that, if the judgment be found otherwise free from reversible error, it might be affirmed as modified by striking therefrom the aforesaid concededly erroneous provisions.

Briefly, the facts testified to and upon which the judgment rests are that plaintiff, an unmarried woman, thirty-five years of age at the time of the trial, and the defendant, an osteopathic physician and surgeon, who was thirty-one years of age at the time of trial, were introduced to each

other in the latter part of 1936. The defendant had recently theretofore opened his office in the neighborhood of Watts in Los Angeles County, where the plaintiff was well acquainted, having been employed by several doctors in that locality. Soon thereafter the plaintiff went to work for the defendant as a receptionist during the afternoons, it being understood that she was to be employed without compensation until such time as the defendant could afford to pay her. She told the defendant that she knew many people and that she could help him "build up" his practice. She continued under this arrangement until July, 1937, when she discontinued working for him. During this period, however, the parties became very friendly, and from time to time they engaged in sexual relations. The defendant was married but separated from his wife. A divorce action was pending in February, 1937, when, according to plaintiff, defendant told her he was going to get a divorce and marry her. During the week of August 14, 1939, plaintiff had sexual intercourse with defendant at his office, at which time, she stated, she remained there all night. The next time she saw him was on or about October 1, 1939. In September, 1939, she discovered that she was pregnant, and on May 6, 1940, the first child, George Winfred Andrade, was born. After the first child was born, plaintiff claims that she again had sexual intercourse with the defendant on August 23 and September 13, 1940. From March, 1940, to August, 1940, the plaintiff did not see the defendant at any time. During the months of August, 1939, to November, 1940, when the plaintiff again became pregnant, defendant was living with his wife. Defendant admitted having sexual intercourse with the plaintiff in the years 1936 and 1937, but denied such relations during the years 1938, 1939, 1940 and 1941. Plaintiff testified to having had sexual relations with the defendant during the years 1937 to 1940 inclusive.

It is the contention of appellant that the testimony of the respondent is so inherently improbable as to be unworthy of belief, in that she did not contact appellant from March, 1940, to August, 1940, during which time she was pregnant and gave birth to a child on May 6, 1940; that she did not charge appellant with the paternity of the child until August, 1940, at which time she asked him to acknowledge its paternity, which appellant refused to do; and further, that it is not reasonable to assume that after he so refused to sign the

"paternityship papers" she would again submit to acts of sexual intercourse with appellant and as a result give birth to a second child.

In answer to appellant's contention in this regard, it may well be said that one thing is certain; if the respondent told the truth when she testified that from about the time she first met appellant up to the time of trial she never had sexual relations with anyone other than appellant, then he must be the father of the child, whether or not she is correct as to dates. And in the face of conflicting evidence, this court will not attempt to determine the weight of evidence or the credibility of witnesses, but will decide only whether upon the face of all the evidence it can be held that sufficient facts could not have been found to warrant the conclusion arrived at by the trier of facts. If the circumstances in evidence reasonably justify the judgment of the trial court, the opinion of a reviewing tribunal that these circumstances might also reasonably be reconciled with a verdict for the opposite party will not warrant interference with the determination of the trial court. Before a judgment can be set aside on appeal on the ground of insufficiency of the evidence, it must be made clearly to appear that upon no hypothesis whatever is there sufficient substantial evidence to support the conclusion reached in the court below; while before we can interfere with a judgment on the plea that it is founded upon evidence "inherently improbable," we must be able to say that to believe such evidence is to assume that something has been done which it would not seem possible could be done under the circumstances described, or that such evidence involves conduct that no one but a person of a seriously calentured mentality would be likely to do. We are not warranted in applying any such strictures to the evidence in the case at bar.

In the trial of the case now under consideration, the court was also aided by the presence of the involved children, whereby the court was enabled to observe their appearance, actions, characteristics and resemblance to the appellant. One such characteristic was a birth mark upon the neck of one of the children which corresponded to a like mark of identification on the back of appellant's neck. True, the record herein presents a conflict, but that merely presents a situation in which the trial court is best qualified to make the proper determination. As was appropriately stated in

the case of *Parker* v. *Riddell*, 41 Cal. App. (2d) 908, 913 [108 P. (2d) 88]:

"The rule is that an appellate court may not disturb findings of facts based on conflicting evidence. The trier of facts has the opportunity of observing the witness and his general demeanor. The appellate court simply reads the record in cold type and sometimes does not obtain from it the impression received by the hearer of the spoken word. The tongue is simply the means or method of conveying thought. An impulsive or unconscious gesture, the intonation of the voice, a hesitant or an alert answer may possibly exclude an inference otherwise reasonably drawn from the written record. In considering an attack upon the findings, the test is 'not how we would find the facts to be', but whether there was substantial evidence strong enough to justify the conclusion reached. . . ." (Citing cases.)

■ Appellant's next major contention is that the trial court erred in awarding respondent attorney's fees for prosecuting the action where no award of such fees was made pendente lite. Reference to the history of section 196a of the Civil Code, under which this action was brought, will prove helpful in arriving at its true meaning in the form in which it now appears. The section came into existence by enactment in the Statutes of 1913, page 218, and was amended by the Statutes of 1939, page 1758. Said section is hereinafter set forth, and, for purposes of clarity, the matter added by the amendment is italicized:

"The father as well as the mother, of an illegitimate child must give him support and education suitable to his circumstances. A civil suit to enforce such obligations may be maintained in behalf of a minor illegitimate child, by his mother or guardian, *or by a guardian ad litem appointed upon the written application or with the consent of his mother; provided, that such application or consent shall not be necessary if the mother is dead or incompetent,* and in such action the court shall have power to order and enforce performance thereof, the same as under sections *137, 137.5,* 138, 139 and 140 of the Civil Code, in a suit for divorce by a wife."

The first sentence of the statute creates the obligation of the father to support his illegitimate child. This portion of the statute has remained unchanged from the time of its original enactment. The case of *Arais* v. *Kalensnikoff*, 10

Cal. (2d) 428 [74 P. (2d) 1043, 115 A. L. R. 163], holds that inasmuch as this sentence of section 196a of the Civil Code required a father to support his child, the trial court had power to order him to pay attorney's fees in the action brought to enforce that obligation.

The case of *Kyne* v. *Kyne,* 38 Cal. App. (2d) 122, 132 [100 P. (2d) 806], in referring to the Arais case, says: "The Arais case determined that it was proper to allow the attorney's fees as part of the judgment. Since they are allowed as part of the judgment it is obvious that they must be allowed after the services have been rendered."

It must be borne in mind that both of these cases interpret said code section before the 1939 amendment became effective; hence the law at that time was that attorney's fees were allowable as part of the final judgment, and the Kyne case specifically held in the following language that they were not allowable pendente lite: "Appellant, while recognizing the holding in the Arais case, contends that it is not proper to make such allowance after the services have been performed. Certain cases involving the allowance of fees in divorce actions have been thus interpreted. (See 1 Cal. Jur., p. 998, sec. 51.) This rule has no application here. In cases under section 196a of the Civil Code the allowance of attorney's fee is predicated upon the theory that such legal services are part of the child's right to support. In *Schallman* v. *Haas,* 33 Cal. App. 28 [164 Pac. 336], it was held that the court is without power to allow such fees *before* judgment. . . ."

The Supreme Court has recently construed the effect of the 1939 amendment to section 196a, *supra,* in the case of *Carbone* v. *Superior Court,* 18 Cal. (2d) 768, 770 [117 P. (2d) 872, 136 A. L. R. 1260], wherein it is said:

"Under the plain language of section 196a as amended the court in an action to enforce the obligation of a father to support an illegitimate child has the same power to order the performance of that obligation as it has to order the performance of a husband's obligation under section 137 in a suit for divorce by a wife. Under section 137 the court, when an action for divorce is pending, may in its discretion order the husband to pay as alimony any money necessary to enable the wife to support herself and her children or to prosecute the action. Therefore it may likewise in its discretion order the payment of money necessary for the support of the illegitimate child and the prosecution of the

action pending its determination. (See 28 Cal. L. Rev. 442, 446.)

"Not only is the amendment clear and explicit in its terms, but its purpose to provide for an award *pendente lite* is apparent from the previous interpretation of section 196a. Although it was held that the final judgment might include provision for attorney's fees (*Kyne* v. *Kyne,* 38 Cal. App. (2d) 122 [100 P. (2d) 806]; *Arais* v. *Kalensnikoff,* 10 Cal. (2d) 428 [74 P. (2d) 1043, 115 A. L. R. 163]) and support of the illegitimate child from the date of filing the complaint (*Kyne* v. *Kyne, supra; Mathews* v. *Hornbeck,* 80 Cal. App. 704 [252 Pac. 667]), the right to counsel fees, costs, and support pending the final determination of the action was denied. (*Schallman* v. *Haas,* 33 Cal. App. 28 [164 Pac. 336].) The legislature in adopting the amendment presumably had these decisions in mind and intended to change the law."

Manifestly, the Supreme Court has held that the 1939 amendment by its reference to Civil Code section 137.5 gives the court the power to allow attorney's fees pendente lite, which power the court did not have before the amendment.

The question here presented is whether this amendment precludes attorney's fees as part of the final judgment; that is, whether by reason of the 1939 addition to section 196a of the Civil Code, the law as it existed prior thereto and as it was interpreted by the courts is now obsolete so far as attorney's fees awarded for the first time in a final judgment are concerned, or whether the 1939 amendment gave an added and alternative method by which attorney's fees could be assessed either pendente lite or by inclusion in the final judgment.

The portion of section 196a following the first sentence thereof (and containing the enacted amendments) primarily concerns matters of procedure for the purpose of enforcing the obligation contained in the first sentence. This procedure is permissive and auxiliary to other procedures and is not exclusive. The statute itself thus provides when it says: "A civil suit to enforce such obligations *may* be maintained . . . and in such action the court *shall* have power. . . ." (Emphasis added.) The mere fact that the court *shall have power* to enforce performance by virtue of the other clauses set forth in section 196a does not of itself import an exclusive method of enforcing performance of the obligation. Nor

is this the holding in the case of *Carbone* v. *Superior Court,
supra.* That case decided but one point, viz.: that pendente
lite awards were proper in an action brought under section
196a. The Legislature left unchanged the basic support law,
as contained in the first sentence of section 196a (and which
is the foundation of the rulings in the Kyne and Arais cases,
*supra*); but, through the additions in the remainder of said
section, the Legislature enlarged the right to receive support
and attorney's fees pendente lite. This merely provided an
additional remedy for procuring the basic support provided
in the first sentence of section 196a. The plaintiff in an action
brought under said section might not desire to accept the
auxiliary remedy provided in pendente lite proceedings be-
cause of the measure of proof necessary. It is practically
equivalent to the necessity of two complete trials on the
paternity issue. It is not the simple matter of an ordinary
divorce case where the validity of the marriage and the legiti-
macy of children are admitted.

In the light of the foregoing, it seems reasonable to as-
sume that, confronted with the decision in the case of
*Schallman* v. *Haas,* 33 Cal. App. 28 [164 Pac. 336], and
subsequent decisions following the rule there enunciated, the
Legislature by the 1939 amendment, as we view it in the
light of the holding of our Supreme Court in *Carbone* v. *Su-
perior Court, supra,* simply undertook to permit the allow-
ance of attorney's fees in actions brought under section 196a
of the Civil Code *not only* at the time of the final judgment,
but pendente lite as well.

■ Appellant's final contention is that the award of $600
attorney's fees is excessive, in view of the evidence as to
appellant's earnings and ability to pay; that although the
amount of the award lies within the discretion of the court,
the discretion exercised must not be an arbitrary one.
(*Arnold* v. *Arnold,* 215 Cal. 613 [12 P. (2d) 435]; and that
the award in this case, where the appellant's earnings are
between $150 and $200 per month, is excessive and amounts
to an abuse of discretion.

In *Kyne* v. *Kyne, supra,* the measure by which attorney's
fees are to be gauged is thus stated: (1) defendant's finan-
cial ability to pay, and (2) the character and amount of
services rendered. Appellant testified that he earned from
$150 to $200 per month; that his wife was working; that
respondent owned, as she admitted, four pieces of property
with an assessed valuation of ''probably three or four thou-

sand dollars'' and from which she enjoyed an income of $60 or $65 per month. Appellant further testified that he was the owner of two automobiles free and clear of encumbrance.

When consideration is given to the nature and extent of the services rendered by respondent's attorney, consisting as they did of filing the action in question, taking the deposition of appellant and being present at the taking of the deposition of respondent; conducting all the necessary interviews with witnesses and others in preparing the case for trial; spending five days in the trial thereof, and performing the necessary services subsequent to trial, coupled with appellant's proven financial ability; and, in addition, the wide latitude and discretion vested in the trial court, we are not disposed to hold that the award of $600 for attorney's fees is so unreasonable as to constitute an abuse of discretion. This is especially so when, as here, the court directed that the attorney's fees should be paid in monthly installments of $50 extending over a period of one year.

It was agreed between the parties that the judgment herein should be corrected and amended to show the date of the birth of George Winfred Andrade as May 6, 1940, instead of May 6, 1941.

For the foregoing reasons, the judgment appealed from is modified by inserting therein the date of May 6, 1940, instead of May 6, 1941, as the date of the birth of the minor child George Winfred Andrade, and by striking from the judgment the provision contained therein reading: ''and the additional sum of $10 per month for the plaintiff herein for her care of said children while she is not working''; and by further striking from said judgment the words: ''and it is the further order of this court that the defendant George W. Newhouse pay to plaintiff the sum of $250 for medical and hospital expenses incurred at the births of said two children.'' As so modified, the judgment appealed from is affirmed, neither party to recover costs on appeal.

Doran, J., concurred.

York, P. J., concurred in the judgment.