**STATE, ex rel. RAYDEL, Complainant-Plaintiff, v. RAIBLE, Defendant.**

Common Pleas Court, Cuyahoga County.

No. 631251. Decided February 3, 1953.

Sindell & Sindell, Corrigan, McMahon & Corrigan, Cleveland, for complainant-plaintiff.
Wm. J. Kraus, Edw. Lurie, Cleveland, for defendant.

## OPINION

By NICOLA, J:

The action against the defendant was brought under favor of §8006-1 et seq GC. The complainant, Alice E. Raydel, an unmarried woman, alleged in her complaint that the defendant was the father of a child born to her on December 28th, 1949. The jury found the defendant guilty of being the putative father of said minor child, and this Court entered judgment on said verdict. The further duties of the Court are set forth in §8006-17 GC as follows:

"* * * if the child is alive the Court shall adjudge that he (the defendant) pay to the complainant such sum as the Court may find to be necessary for her support, maintenance, and necessary expenses caused by pregnancy and childbirth, together with costs of prosecution, and that a reasonable weekly sum be paid the complainant for support and maintenance of the child up to 18 years of age."

Pursuant to this statutory command, after the verdict was returned and judgment entered thereon, the Court sought at once to adjudicate the two matters called for, but the hearing for good cause was continued to January 26, 1953, at which time the testimony of the parties was taken. In the light of said testimony the Court now proceeds to solve as best he can the two matters involved.

I. What shall complainant be allowed for her support, maintenance and necessary expenses caused by pregnancy and childbirth?

At the hearing the complainant herself could actually itemize her outlay for the above purposes at about $846. No mention was made by complainant in her itemization of expenses incurred in being taken by automobile to the doctors during pregnancy, to the hospital before, and from the hospital after the child was born. Also she must have expended something for help and assistance immediately before the birth of her son. However, these facts were developed in the trial of the bastardy action and will be taken into consideration in arriving at the amount to be fixed. We, therefore deem it just that she be allowed for her support, maintenance and expenses the sum of $1,000. Judgment will be entered in that sum.

II. Coming to a consideration of the second phase of the statutory provision—the adjudication of a reasonable weekly sum to the complainant for the "support and maintenance" of the child up to the age of 18 years—we are confronted with two legal questions, as follows:

(a) When does the support and maintenance of the child commence, and (b) does the statute permit the allowance of attorney fees for complainant's counsel?

We will consider the above questions in the order propounded.

(a) The defendant asserts that under the ruling of **Griffin v. Zimmerman, 67 Oh Ap 273**, no award may be made for support of an illegitimate child until the accused is found guilty of being the putative father. The case cited so holds and proceeds on the theory that this provision of the Code is in derrogation of Common Law and must be strictly construed. Then, construing the Code strictly the Court decides that support of the child starts from the date of the adjudication of paternity.

The last decision of lower courts on the subject is by the Common Pleas Court of Hamilton County in **Davis v. Brown, 60 Abs 183**, decided **April 1, 1951**. This trial court follows the Zimmerman case first above cited.

On the other hand the complainant points to the former cases of **Willis v. Wilson, 83 Oh Ap 311,** and **Gill v. Volz. 85 Oh Ap 207,** which hold the contrary—that the putative father after conviction must pay for the support of the child from its birth.

Judge Hornbeck in the Gill v. Volz case says:

"The whole trend of the legislation is to lend assistance of the law to the enforcement against the father as his obligation to support and maintain his child, and it is not probable. and to us it seems a strained construction of the statute to hold, that it was intended this obligation shall not begin from the date of the birth of the child."

That the opinion of the eminent jurist is sound is, in our judgment supported by the latter part of the same statute which is quoted above.

"In the event said child is not born alive, or is not living at the time of said plea or **finding** of guilty, the court shall order the accused to pay * * * including therein a reasonable amount for maintenance of said child until its death, * * *."

The legislative intent must be gathered from the entire statute. Surely our solons did not mean that if the child died a week before the finding, the complainant would be paid for the child's support during its lifetime, but if he lived, the complainant could not recover for his support during the same period of time. The rule of reason runs through all statutes as Judge Taft of the Supreme Court of the United States once remarked, and here it compels us to conclude that payment for the child's support starts from the time of its birth.

There being a difference in the views of the Courts of Appeals, the Gill v. Volz case supra, was certified to the Supreme Court of Ohio for its decision. The errors involved in the case before the Supreme Court were, first, whether the verdict of the jury could be returned by nine members thereof, or whether it should be a unanimous one; second,—whether the court erred in entering judgment for the complaining mother in a given sum without hearing any evidence, and third, whether the court erred in ordering payment of support for the child from the date of his birth.

The syllabus of the Supreme Court, found in **Gill v. Volz, 156 Oh St, 60,** decided in July, 1951, refers only to the first ground of error, and settles the law in Ohio that such a case is civil in its nature and therefore, a verdict signed by nine of the jurors is sufficient.

The syllabus does not refer to the other two grounds but Judge Hart in the concluding paragraph of his opinion says.—

"On examination we do not find any reversible error as

to the other assignments by the accused, therefore the judgment of the Court of Appeals is affirmed."

It is clear to us that the Supreme Court considered all the assignments of error and from the language of Judge Hart the judgment of the Court of Appeals stands as the judgment of the Supreme Court. Consequently all doubts are removed from the conclusion that the time for which the support of the child starts is from the day of its birth.

(2) May attorney fees be included in the award to the complainant?

Counsel for the complainant have expended a great deal of time in the preparation and trial of this case, as well as in solving the preliminary questions that arose. Their diligent persistent efforts were crowned by the successful conclusion of the case before the jury. There is no question that counsel should be paid handsomely for their efforts, but may we order the defendant in this case to pay them under the laws of Ohio? "Support and maintenance" have never been interpreted to include attorney fees nor interpreted to exclude them. This is a new question in Ohio under this part of the statute.

Counsel for the complainant argue that in this enlightened age it is unjust to so narrowly construe our statute on the subject as to exclude compensation for those who have brought about justice to a little child. Fallow ground lies before us and we should be bold to furrow deep in the law and provide a precedent for the compensation of lawyers as an includable item under the words "support and maintenance of the child until he arrives at the age of 18 years."

They claim that in California the courts have declared that attorney fees may be granted under a statute containing the same words as used in §8006-17 GC; California having set the pace we should follow in its wake.

Examining the California decisions we find that the wording of Section 186A as enacted in 1913 contains the words "support and education."

Basically they mean the same as the language used in our statute. Under its statute, the California Supreme Court permitted recovery of attorney fees in Arias v. Kalensnikoff, 74 Pac. 2d, 1043-7, on the authority of Paxton v. Paxton, 89 Pac. 1083; 150 Cal. 667. Upon examining this latter case we find that it is a decision interpreting Section 206 of the then code of said state which provides "it is the duty of the father and mother and the children of any poor person who is unable to maintain himself by work, to maintain such person to the extent of their ability.

"* * * Suit was brought by John A. Paxton, an adult person, against his father and mother. He alleged he was blind, poor and unable to support himself, and further that he was unable to proceed with the litigation unless paid certain sums of money pendente lite for his support, counsel fees, etc. After commencement of the action the court entered an order that the defendants on a day named show cause why they should not pay said sums pendente lite. * * *."

Under the above statute (206) after a hearing the trial court ordered defendants to pay plaintiff pendente lite $50 per month for maintenance, $10 for costs and $150 for counsel fees. The defendants demurred to the complaint and alleged that the Court had no jurisdiction to entertain the motion and suit. In said case the Supreme Court held that Section 206 granted a right to the plaintiff but provided no remedy,—no way of enforcing it. It reasoned quite logically that if the statutes granted the plaintiff a right, it did not leave him without a remedy, even though no remedy was specifically set forth in said section or any other section of their code. Therefore the court deemed that it had jurisdiction to enforce the provisions of Section 206 and if it had such jurisdiction it had "power to make all orders necessary for that purpose, including orders for suit money, counsel fees and maintenance pendente lite."

It was stated by the same court in Shallman v. Haas, 164 Pac. 336, that it could not grant support and expenses pending appeal under the law of 1913. After the amendment of 1939 to said Section 196A it could make such an order since the amendment referred to and made a part thereof Section 137 and 137.5 of the code. Section 137.5 contains a specific provision for allowance of attorney fees for prosecuting the action.

Other cases, notably Andrade v. Newhouse, 128 Pac. 2d 927 (1942), seem to indicate that attorney fees were allowable before the code provisions of 1913 were enacted, nevertheless steps were taken to fully settle the question through legisla-. tive action by amending Sec. 196A in 1939.

In Ohio a remedy is provided for payment of the amount allowable for the child's support and maintenance. If the award is not paid it may be reduced to a judgment and payment of said judgment be enforced as in any other case. Also contempt proceedings by the criminal provisions are still available to the complainant to compel the putative father to support his child. In any event we are compelled to closely examine our own statutes and decisions to reach a proper conclusion.

**Sec. 8006-17 GC** referred to above, insofar as it relates to the payment to the complainant after adjudication of paternity is concerned, may be divided as follows:

If the child is alive the court:—

(1) Shall adjudge that he (the defendant) pay to the complainant such sum as the court may find necessary for her **support, maintenance,** and necessary expenses caused by pregnancy and childbirth, together with costs of prosecution; and

(2) that a reasonable weekly sum be paid complainant for **support** and **maintenance** of the child up to 18 year of age.

It will be observed that the court shall adjudge to the complainant **support** for some time before the birth (during pregnancy) and for some time after the birth of said child. In the second part of that statute the court must adjudge her weekly a reasonable sum for **support** of said child for a certain time after its birth up to 18 years of age. Are not the two parts of the above provision of the statute parallel as to wording except that one limits the support of the mother to a relatively short period of time, that is during pregnancy and childbirth, while the other limits support of the child for a long period, to-wit,—from childbirth up to 18 years of age?

The wording is exactly the same and the question is whether we must interpret the parallel wording in the statute in the same manner or in a different manner.

We have an interpretation of the first part of the above sentence in the case of **State ex rel., Beebe v. Cowley, 116 Oh St, 377;** at the time this decision was handed down a weekly sum for the support of the child was not included in the statute, so that the court had to interpret the meaning of "support, maintenance, necessary expenses, and cost of prosecution" allowable to the complainant in the first section of the above statute.

The court said:

"Syl. 1. A sum which includes attorney fees for the prosecution of a bastardy proceedings * * * cannot be awarded to the plaintiff under the provisions of §12123 GC. (Provision same as in §8006-17 GC.)

The Supreme Court in the above case as well as counsel in the instant case made no claim that attorney fees were included in the words "support and maintenance and expenses of pregnancy and childbirth." The court then adverted only to "costs of prosecution" and decided that the General Code does not authorize the trial court to charge the defendant with attorney fees as such "cost of prosecution." If the words "support and maintenance" of the complainant

could have possibly borne the interpretation that attorney fees were includable, would the court not have said so? Since the court did not include attorney fees under the same words that are now also contained in the second part of the sentence, may we do so in this case? All of counsel know that under the Common Law illegitimate children had no claim against their putative father. Statutes for ameliorating the condition of such children in derogation of the Common Law, therefore, must be construed strictly. The statutory history and the above conclusion have been repeatedly pronounced by our courts so that we need not repeat the same in this opinion.

We must keep in mind that no matter how bold the trial court may be, it is not within his province by casuistry to argue himself into a wording clearly contrary to the apparent decision of the Supreme Court of Ohio. We would like to see the attorneys paid but the Court cannot legislate for that purpose. We must declare the law as we see it and consequently we are constrained to the conclusion that attorney fees may not be allowed in this case.

Having resolved these two perplexing legal questions at least to our own satisfaction we come to the question of the allowance to the complainant of a sum for the support and maintenance of the child until he is 18 years of age. Here we are also confronted with perplexing questions.

What measuring rod shall we use in fixing a reasonable sum weekly for his support and maintenance?

Both parties being present at the hearing, the Court at its own instance ordered defendant to take the stand and give testimony under oath of his financial worth, over the objection of his counsel. We also asked his income for the year 1952. Then being satisfied from the testimony under oath that the defendant was worth more than one million dollars, and that he could carry out any order we might issue, the court felt that it was useless to permit plaintiff's counsel to compel the defendant to disclose the intimate affairs of his business and business connections, the value of his house, his spending for its upkeep, his real estate, his holdings in various companies in the United States and foreign countries. This might do the defendant harm without gaining any advantage for the complainant. However, the complainant was permitted to make proffer of all testimony she sought to solicit in order to save her exceptions.

We have before us a little child 37 months old who was brought into the world by the voluntary action of both the complainant and the defendant. We are not characterizing

their past conduct; we are certain, however, that both parents should provide the best that each can give to this boy so that when he arrives at the age of 18 and payments for his support cease, he will be strong in body and mind and spirit, so that he will be able to face the world. The mother should dedicate herself to his upbringing while the putative father should provide all the financial help necessary to properly maintain him. That the boy should not live in penury goes without saying; neither should he live in luxury, for that would beget habits of idleness, softness and general disregard for the things that make for character.

To the end of making a man of this boy in 18 years, we have on the one hand a woman whose upbringing was in an humble home presided over by honest, hard working parents. We have seen the mother and the brothers as they testified in this case. We also know from what was shown during the trial and from the testimony of the defendant himself given during this last hearing, that his financial status is comparatively quite high. If there is a proper combination of dedication on her part to raise these children properly and sufficient financial assistance by the defendant to that end, then we may be reasonably certain that the child will become a good strong young man and a good citizen.

We can compel the defendant by our order to contribute the proper financial help but the success of this venture in making a man out of the boy will depend on the mother, over whose activities this Court may have little or no control. It will depend upon her in the final analysis whether a man shall be raised by the time the child arrives at the age of 18 and ceases to receive support from his putative father.

Applying our views to the past support and maintenance of the child, we are concerned only with awarding the complainant the sum that she has actually expended for the 37 months that she has kept this child. We must take into consideration that she has had another child, by the defendant, who is approximately 2 years older than he, and that a settlement was made for said first child's support, though we do not legally know what that settlement was. The children of the defendant surely ought to be raised together in a home and not in an institution. Therefore the defendant should make it possible for the complainant to occupy a home for her boys and he should provide the means for keeping up a home including support of the mother, if she takes care of the boys, otherwise a nurse would have to be hired.

We therefore are concerned with what the mother has spent to keep up the home during the past 37 months, and then

divide the cost thereof in two, one half to be borne by the first child and one' half to be borne by the defendant for the second child with whom we are directly concerned.

The complainant and her two children and her brother have been living in a home on Invermere Road, Cleveland. This home is in a good neighborhood being east of Lee Road and two streets south of Scottsdale, near the Shaker Heights line. We have some evidence as to the cost of keeping this home during the said 37 months. The complainant herself stated that she spent $500 per month to keep the family of four, but could not fully justify that sum in her itemization. We do know that she lives in a $15,500 home and we should take this into consideration in fixing the amount due her. However, in doing so we must keep in mind that she was not quite fair with the Court. She stated that she drove her automobile since the latter part of June, 1950, more than 55,000 miles for the children, her reason being that the distance to her mother's home is 20 miles while the distance to her friend's home is about 10 miles, so that if she made a trip to both places it would be 60 miles. If you calculate 60 miles per day for 2½ years during which time she owned the automobile, she would have to make a trip to her mother's house and to her friend's house every day during that time in order to arrive at 55,000 miles.

This to our mind is ridiculous. Certainly the child should visit his grandmother, possibly once or maybe twice a week. Whether a baby should be taken to a friend's home is doubtful, but he should not be taken there very often. She also stated that the child would need psychiatric treatment because of the situation in which it found itself. I do not know where she got such information or learned of such terms. The only thing that a little child of 3 years of age needs is good, substantial food, proper care and the love that the mother only can give. The complainant, in figuring her costs since the child was born, has made the figures just a little high.

Figuring the cost of rent of such a home at about $1200 (about 8% return on the investment), food at $1800, medication at $200, automobile at $250, clothes at $800, makes a total of $4250, or $2125 for each child; adding $275 for washing, dry cleaning and incidentals, including extra medical care, makes a total of $2400, which the defendant should pay per year, or a total of $7400.00 for the 37 months to January 28, 1953. This may seem high to some and low to others, but we have taken into consideration the situation as it was unfolded before us in reaching the above figure.

Judgment will be entered for the complainant for the above amount.

We believe that up to the period when the boy becomes 12 years of age the complainant should receive the sum of $50 per week for his support and maintenance. For the period between 12 and 18 years of age, the complainant should receive the sum of $60 per week. A proper order will be made for the payment of above sum weekly.

In passing it must be noted that the defendant sent his girls to private schools, to-wit: Hathaway Brown and Laurel in the city of Cleveland. These schools rate very high. Equally high is the rating of University School if it is desired to send the boys to a private school. The cost of board, lodging and tuition at University School is well known to be $1500 for a period of 9 months which is for 7 days per week board and lodging, and less if the student only stays 5 school days per week. We have considered that the boy when he becomes 12, 14 or 16 years of age will need spending money and more costly clothes and so we have graduated the weekly payments to take care of the situation. The sum allowed is sufficient to send the boy to summer camp in Canada if it should be so desired. Thus the complainant will have enough to properly rear him to become a young man of character.

We believe our finding is thoroughly supported by the case of Berry v. Chaplin, 169 Pac. 2d 453, where an allowance of $75.00 per week for the maintenance of Chaplin's child was entered. There the rent was $150.00 per month and there was only one child's support to pay for it. There it was "conceded that unless a nurse should be engaged the child must be cared for by either the mother or the grandmother. The maintenance of one of them is a necessary part of the support of the child."

But complainant's counsel cry that the child may be stricken with some dread disease like polio. We have included a very liberal allowance for medical attendance. If a very serious malady attacks the child, recourse may be had to this Court for its jurisdiction is continuing as it relates to illegitimate children and the present order is subject to modification if the circumstances change. **Nash v. Nash, 77 Oh Ap 155; Nivin v. Tomblin, 82 Oh Ap 376.**

A journal entry may be drawn accordingly.