## James v. Commonwealth, for Use, etc.

(Decided February 11, 1921.)

### Appeal from Carter Circuit Court.

1. Criminal Law—Continuance—Affidavits.—The court's refusal to grant a continuance because of absent witnesses (where the affidavit incorporating the testimony of such witnesses is read to the jury) will not be disturbed on appeal, unless from all of the facts and circumstances appearing in the record there was a manifest abuse of discretion by the court in refusing the continuance, by reason of which the party applying did not obtain a fair and just trial.

2. Bastards—Proceedings Under Bastardy Laws.—In bastardy proceedings instituted under our statute (sections 167-180 inclusive) it is competent to allow testimony showing the situation in life of the parties, which includes their financial standing, as well as their obligations because of dependents, all for the purpose of showing defendant's ability to pay the amount which should be fixed for the support and nurture of the child.

3. Bastards—Proceedings Under Bastardy Laws.—Whether it is competent to make profert of the child before the jury in the trial of such proceedings is not determined, since the record is not in condition to present the question; but it is held that it is not error for the child to be present in the court house with its mother during the trial in the absence of any effort to call the jury's attention to it for the purpose of showing resemblance to the defendant on trial.

4. Bastards—Setting Aside Verdict.—Verdicts in bastardy proceedings, like those in other civil cases, to which class it belongs, will not be set aside unless palpably and flagrantly against the evidence.

WAUGH & VINSON for appellant.

THOMAS S. YATES for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On June 8, 1918, the appellant and defendant below, Bert James, was arrested upon a warrant issued by the

county court of Carter county in an affiliation proceeding (usually called bastardy proceeding) and which is provided by sections 167-180, inclusive, Kentucky Statutes. The proceedings were instituted by Sophia Pennington, an unmarried woman, who charged defendant and appellant with being the father of her illegitimate child, which was born on February 14, 1918. A verdict in the county court found defendant guilty and required him to pay for the support of the child the sum of $50.00 per year for eleven years, aggregating the sum of $550.00. Defendant prosecuted an appeal from the judgment rendered on that verdict to the circuit court of the county, and a trial had therein on May 28, 1919, resulted in another verdict of guilty and an assessment against him of a total sum of $750.00, payable in installments of $50.00 per year for fifteen years, and from the judgment pronounced on that verdict this appeal is prosecuted.

A number of alleged errors are incorporated in the motion and grounds for a new trial, but all of them except three are abandoned and only those three are urged before us. They are: (1) error of the court in refusing to grant defendant a continuance upon his application therefor supported by his affidavit; (2) incompetent evidence which the court permitted the Commonwealth to introduce over defendant's objection, and (3) that the verdict is not sustained by sufficient evidence.

The appeal to the circuit court from the judgment in the county court was taken March 26, 1919, but the case had been pending in the county court at that time for more than eight months, since, as we have seen, the defendant was arrested on June 8, 1918. On the 23rd day of May, 1918, being the day the case was set for trial, defendant filed his affidavit showing the absence of certain named witnesses and what their testimony would be and entered motion for a general continuance of the case. The court overruled the motion and set the trial forward six days, at which time some of the witnesses included in the affidavit were present, but others were still absent. The motion for a continuance was renewed at that time but the court overruled it and permitted the defendant to read his affidavit incorporating the material testimony of the absent witnesses. Two of those witnesses, according to the affidavit, would testify if present that they had been criminally intimate with Sophia Pennington at a time when they could have been the father of her infant child. One absent witness, Will Stephens, (and

who it is strenuously argued is the real putative father), is made to say in the affidavit for a continuance that the child's mother after it was begotten stated to him that he was its father.    This, of course, is only in the nature of a contradictory admission made by the mother, and Stephens was shown to have been all the while after the institution of the proceedings enlisted in the army and no effort was ever made to take his deposition, although the proceedings had been pending for nearly a year before the trial. There were two other witnesses who testified at the trial to having had intercourse with Sophia Pennington and we are unable to see under all the circumstances in the case wherein the court abused its discretion, under the rules of practice prevailing in this Commonwealth, in declining to continue the case, and permitting defendant to read his affidavit as the depositions of the absent witnesses.    It might be stated at this point that he may in reality have profited by the court's ruling, since some of the witnesses for whose absence he made the first motion for continuance were present at the trial and testified exactly opposite to what he claimed in his affidavit they would do.    In cases of this kind a reversal will not be ordered unless it appears from the record that the action of the trial court in refusing the continuance was a manifest abuse of discretion, and clearly prejudiced the substantial rights of the complaining litigant, and prevented him from obtaining at the trial substantial justice. We can detect no difference between the consequences, in the matter complained of, in the court's ruling in this case, and similar rulings in many other cases which this court has uniformly upheld.

Under ground (2), argued and relied on for a reversal, it is insisted (a), that the court erred in permitting the introduction of testimony showing the amount of property owned and possessed by the mother of the child and by the defendant, and (b), that profert of a child before the jury for the purpose of establishing a resemblance between it and the defendant as its alleged putative father was incompetent and constituted a reversible error. Considering these subdivisions of the ground under consideration in the order mentioned, it is doubtful if defendant is in condition to insist upon them, since his counsel first made inquiry touching the objections made in each of the subdivisions; but, waiving this point, we are thoroughly convinced that the complaint made in subdivision (a) was not error.   Proceedings of this kind

are generally held to be civil in their nature and not criminal. Cases from this court so holding are, Chandler v. Commonwealth, 4 Met. 66, and Francis v. Commonwealth, 3 Bush. 4. Their chief purpose is to place the burden of rearing, caring for, and educating the unfortunate infant upon the shoulders of him who is responsible for its existence. If the defendant is in reality the father of the child, for whose benefit the proceedings are provided, the latter is entitled to have its father contribute such a sum as is commensurate with his ability to pay. The state is interested in having its inhabitants reared and educated in such manner as to develop the best citizenship. This duty is primarily imposed upon the parents of children and if the mother of a bastard child, on account of her poverty, is unable to discharge that duty, the greater reason exists why the father should contribute a sum commensurate with his ability to pay for the purpose of discharging it. Hence, it is said in 3 R. C. L., 767, "The amount allowable for the maintenance of a bastard child is largely discretionary, depending upon the situation in life of the parties." The situation of the parties necessarily includes their *financial* situation, and we are convinced that the court committed no error in admitting the testimony complained of. Of course, it is allowable in such cases (as was permitted in this one) to show other financial burdens of the defendant, in the way of dependents, which the jury may consider in measuring his ability to pay the sum found by their verdict.

The complaint made in subdivision (b), of the ground now under consideration, has not heretofore been determined by this court, and the courts of other jurisdictions are not in harmony upon the question. 3 R. C. L., pages 764-766; 5 Cyc. 663; 7 Corpus Juris 993; notes to case of State *ex rel,* Scott v. Harvey, 52 L. R. A. 502; Flores v. State, 1917B L. R. A. 1148, and Frierson v. Commonwealth, 175 Ky. 684. From an examination of the authorities cited it will be found that, perhaps numerically speaking, the greater number of courts hold that it is competent to make profert of the child upon the trial of this character of proceedings for the purpose of establishing its paternity, but it will also be found that, for various reasons, other courts hold that such profert is prejudicial and incompetent. But, even those of the latter class, as will furthermore be seen, say that it is not incom-

petent for the child to be present in the court house during the trial, and that profert of it may be made to show that its father is of a different race than the one to which the child belongs. But, whatever may be the true doctrine upon this subject, we do not feel called upon, under the condition of this record, to commit ourselves either the one way or the other upon the questions of practice involved, since we find from the record that the only act occurring at the trial, remotely resembling a profert of the child (who was present throughout the trial without objection) was a statement by the county attorney made while cross-examining a witness for defendant who testified in chief that he had been criminally intimate with the mother, and had an opportunity to be the father of her child. The county attorney then called the attention of the witness to the child and said, "So you think this is your kid, do you?" Defendant immediately objected and the court sustained the objection and the witness was not permitted to answer. So, we have a case where no effort was made to make profert of the child for the purpose of establishing resemblance between it and the defendant on trial, and if what was done by the county attorney could be said to constitute a profert of the child for the purpose of showing resemblance or non-resemblance between it and the witness on the stand, the court excluded it. We therefore think that this ground, so earnestly relied on, is not presented by the record and we are unwilling for the first time to commit ourselves upon a disputed legal proposition when to do so would make our commitment possess at least the coloring of dictum. We prefer that before we should assume a permanent position upon a disputed proposition of law, not heretofore passed on by us, we should have a case squarely presenting the question.

Upon ground (3) relied on, but little need be said. The mother of the child testified positively that defendant was its father. He admitted illicit relations with her but claimed that they began and occurred in September before the child was born the following February, which was too late for him to be its father. He furthermore testified that he was not acquainted and did not begin associations with the mother of the child until about the first of September preceding its birth, but in this he is contradicted by a number of witnesses who were neighbors of the mother and who testified that he was constantly visiting her about the time the child, in due course

of nature, was begotten. The credibility of the witnesses testifying in this kind of proceeding is, as in other cases, to be determined by the jury trying the case. If they in this case believed the mother and other witnesses, and some circumstances appearing in the case, no other verdict than the one returned could have been made; while if they had believed the defendant and his witnesses no doubt the verdict would have been in his favor. Whether we regard this as a civil or criminal proceeding, we are not authorized to reverse the judgment and grant a new trial, unless the verdict is palpably and flagrantly against the evidence. We do not find it so, and are therefore constrained to affirm the judgment, which is accordingly done.