## Tuttle v. Commonwealth.

May 9, 1041.

372

J. J. Tye for appellant.

Hubert Meredith, Attorney General, and W. Owen Keller, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY MORRIS, COMMISSIONER— Affirming.

Appellant was convicted under a true bill charging him with carnally knowing a female under sixteen, he being at the time more than twenty-one years of age, an offense denounced by Section 1155, Kentucky Statutes, the jury inflicting imprisonment for a period of seven years. On appeal it is urged that the court of first instance committed errors which deprived him of substantial rights, in: (1) Admitting incompetent and irrelevant evidence. (2) The giving of erroneous instructions. (3) In refusing to sustain motion to set aside the swearing of the jury when the prosecution exhibited and displayed the baby child in the presence of the jury. (4) In permitting the prosecutrix to testify as to acts at other times and places, covering a period of over four years, after requiring the commonwealth to "fix the time and place."

A discussion of the complaints presented does not require a detailed statement of the sordid facts presented. It may be sufficient to say that the prosecutrix, as proof shows, was a well developed girl, and the stepdaughter of accused; the latter was at the time of trial about fifty years old. The girl, Angeline Blanton, was lacking in education, not having progressed beyond the fourth grade in elementary schools. Her mother had been previously married and had several children. The daughter was born in Canada, and with her mother and

the others of her family came to Kentucky when she was two years old; the mother and appellant married in 1935. He had several children, one of whom lived in the household.

The girl being required by the court to fix as near as possible the time of the alleged act, said it occurred ''some time last summer (the trial was in June 1940) on Big Richard Creek in the Jim Cobb hollow.'' She and the stepfather were hoeing corn, and ''he picked up the hoe and said 'Let's go up the hollow and hoe corn.' '' She went with him; he suggested intercourse and she consented, they going into an old vacant house up the hollow.

About five months after this act of intercourse appellant learned that she was pregnant and arranged for her to go to a neighbor's home. The mother learned of the situation, and she and appellant separated. It developed on direct examination that acts of intercourse between the two had been going on for about four years, beginning at a time when Angeline was twelve or under, and that when she was about thirteen she had borne another child.

It was developed that the girl on different occasions had laid the paternity of the first child upon a young man because appellant had made her do so. She had also told the midwife who attended her in the second childbirth that Crit Asher was the child's father, but this was because appellant had told her to. At these times she said she did not know any boys by the names given, though she admitted that ''last summer'' she and Crit Asher had been sweethearts. She denied sexual acts with any other than appellant.

Other evidence by members of her family, neighbors and relatives showed that appellant manifested much favoritism and friendly disposition for and toward the girl. It was testified that he would sometimes accompany the family to church, and he and Angeline would leave before the other members; that he would at times insist on the others going to church and he and the girl would remain at home. One witness testified that upon one occasion he went to the home, and that accused and the girl arose from a bed and came to the door.

Accused testified that he had treated all the step-children as best he could, providing for them and giving

them good advice. He denied that he, at any time or place, had improper relations with Angeline. There was some discussion as to age, it appearing that at a time when she was before the grand jury she had said she was seventeen. The discussion as to age is of little effect since the court gave the appellant the benefit of the doubt on this question by correct instructions as to the degree of punishment according to the age of complainant, Kentucky Statutes, Section 1155.

Appellant says that prior to the time the wife left home (March 11, 1940) she had never complained of any familiarity between accused and prosecutrix. He denied the alleged arrangements whereby he and the girl might be, or were left alone, though admits that at times they were alone. He also admits the arrangement with a neighbor to take Angeline when it was discovered that she was to give birth to a child. He denied that he ever told her to lay the charge on some other person, and says that others (Mary Perry for one) were trying to get her to charge him and shield another, or others, and he told her that since the case had gone to court she should tell the truth, and she said the child was Crit Asher's.

Such other testimony as was brought forward by appellant related to the fact that Angeline had kept company with other boys, particularly at school in 1936. This and other facts were denied in rebuttal by showing that she was not in school at the time. Such testimony was to the effect that Angeline would ''slip off into the woods'' with other boys at various times, though no specific reprehensible acts are shown, nor was she in school in 1938 or 1939.

It was shown by the official reporter (from notes) that when Angeline was before the grand jury in 1937 (not when this indictment was returned), she stated that she was sixteen and that Birchel Watkins was the only man who had ''ever had to do with me.'' Angeline denied that she had ever had relations with Watkins, or had ''kept company'' with him.

We are only pointed to one part of the evidence which appellant insists should not have been admitted. When prosecutrix was on the stand, the defendant moved to have ''the commonwealth elect which time it wishes to prosecute.'' The court sustained the motion; counsel for commonwealth answered, ''I will fix the

time as near correct as I can." Prosecutrix could not (or did not) remember the date, or the date of the birth of the child. She finally fixed the time and place "some time last summer, * * * June last year," in Knox County, and at the place mentioned above.

This evidence was definite enough as to time and place, and the trial was conducted with relation to the one charge. The testimony to which objection was made was brought out in answer to this question: "Had you and he had intercourse before this time? A. Yes, sir." "Q. Tell how long, over what period of time? A. Well, I don't know, about four years." The complaint is that it can be easily opined that this evidence might not only have prejudiced the jury, but under the instructions given it could have found defendant guilty of any act during the period of four years. The complaint is necessarily coupled with the instructions.

It is noted that upon motion of defendant to so do, the court admonished the jury that any evidence given by the prosecutrix as to acts "at any time other than last June 1939," should not be received except for the purpose of corroborating other evidence. In other words, it was made plain to the jury that the act for which appellant was being prosecuted was that of "last June 1939."

In the recent case (quite similar as to facts) of Williams v. Com., 277 Ky. 227, 126 S. W. (2d) 131, 133, we had the question before us as to competency of testimony of other acts, and where on objection the court had advised the jury as was done here. We said:

"In prosecutions for sexual crimes, such as * * * sexual intercourse with girls under the age of consent, it is competent to introduce evidence of both prior and subsequent acts of a similar nature with the same person, in corroboration or explanation of the act in question, for the purpose of showing the relation and mutual disposition of the parties, or guilty knowledge or intent on the part of the accused, '* * * and the evidence of such corroborative acts tends necessarily to show the design of the accused, and his disposition to indulge his criminal desires as opportunity may offer.' "

We cited a number of cases to the same effect.

However, counsel, as we have indicated, complains

(2) that the instructions were erroneous, in view of the fact that the testimony complained of was before the jury. In giving instruction No. 1, the court embodied directions as to penalties if the jury had doubt as to whether the prosecutrix was under sixteen, or above sixteen and under eighteen years of age at the time of the act charged. Kentucky Statutes, Section 1155. In the instruction the jury was told that if they believed beyond a reasonable doubt that the accused had carnal knowledge of the prosecutrix with her consent "at the time mentioned in the evidence, etc.," they should find him guilty.

Counsel's contention, briefly but substantially stated, is that the instruction did not confine the jury to a consideration of the elected act, but that under the instruction the jury might consider any act committed at any time over the four-year period, and cites Earl v. Com., 202 Ky. 726, 261 S. W. 239, as supporting his contention. In that case we reversed chiefly on the ground that the court did not require election. McCreary v. Com., 163 Ky. 206, 208, 173 S. W. 351.

We said that the court should have required election, or have treated as an election the first act proved by the commonwealth, and having done one or the other, should have limited the jury to a consideration of the particular act. We quoted the instruction given in the Earl case and found it to be prejudicial because it did not limit the jury to any particular time. The only limitation was that the jury might consider any act committed before the finding of the indictment. The instruction did not contain the phrase "at the time mentioned in the evidence," nor similar phrase, and in this respect there is a distinction. It is noted there that the indictment was returned prior to the act of 1922, c. 17, and "under the instruction, as given, the jury may have convicted the appellant for one of the acts constituting the offense which occurred subsequent to the date when the new act took effect." [202 Ky. 726, 261 S. W. 240.] There was no such possibility here.

Gilbert v. Com., 204 Ky. 505, 264 S. W. 1095, is relied upon as is Wilson v. Com., 265 Ky. 337, 96 S. W. (2d) 1026, 1027. In the first case the complaint was that the court did not require election, but gave an instruction similar to the one in the Earl case, which we said was erroneous. It was the combination of the failure to

elect, followed by the instruction limiting the jury to consideration of any act prior to the indictment, which led to reversal.

The same is true of the Wilson case. There was no election, and the instruction threw the door wide open. The court laid down what it conceived to be the proper instruction, embodying the limitation, after telling the jury they might consider other proven acts as corroborative, and limiting the jury to consideration of the act "to the time and place."

In the Williams case, supra, we remarked that there was no complaint of the instruction, except that it did not confine the act to be considered to a day when the first violation was said to have occurred, and said:

"However, it will be observed that the court only a short while previous to the submission of the case * * * had admonished it that the prosecution would be confined to the first act testified to by the prosecutrix, and we are authorized to presume that the jury was composed of members sufficiently intelligent to remember that admonition and to observe it in considering the testimony, and in making its verdict."

In the instant case counsel for accused had insisted on an election, and as the record shows the commonwealth conducted the prosecution relying on the elected act. In addition the court clearly told the jury the purpose for which it might consider evidence of prior acts.

(3) In brief it is said that after the prosecution had introduced prosecutrix and she had testified as to accused being the father of the last child, her mother walked into the court room with the children and handed the smaller child over to prosecutrix. Counsel for accused moved the court to set aside the swearing of the jury "because the mother of the prosecuting witness brought a baby into court and handed it to witness in the presence of the jury." This motion was overruled. Counsel says the episode had the effect of creating a sympathy for the prosecutrix and incited the jury to prejudice toward appellant. Counsel cites no case where this court has condemned the display of a child or children, under the present statute, but points out that in a trial for seduction (Kentucky Statutes, Section 1214), such procedure has been under certain circumstances condemned.

Counsel does not refer to the case, but in Johnson v. Com., 263 Ky. 763, 93 S. W. (2d) 856, we held that the fact that the prosecutrix sat in the court room with a baby in her lap, to which no reference was made as to its parentage, and which she did not hold while testifying, would not authorize a reversal of judgment of conviction. In Jordan v. Com., 180 Ky. 379, 202 S. W. 896, 1 A. L. R. 617, and Maples v. Com., 242 Ky. 212, 45 S. W. (2d) 1060, practice of exhibiting a child in such cases was condemned, though in one case waived because of want of timely objection. In both the Johnson and Jordan cases we held that the probability that the appearance of the child might create such a feeling [unfavorable sentiment] "is not, we think, sufficient to justify us in holding that the mother may not have [her child] with her in the court room." [263 Ky. 763, 93 S. W. (2d) 857.]

Here the sole issue was whether the accused had intercourse with the girl in the summer (June) of 1939. Her proof was to the effect that he had; his was to the effect that he had not then, or at any other time. She testified that accused was the father of the last child; he insisted he was not, and in addition undertook to prove other acts, on her part, showing unchastity. We fail to see that the episode complained about could in anywise bias, or prejudice the jury. There was no effort to exhibit nor is it claimed that the child was exhibited for the purpose of showing paternity by resemblance, and it was perhaps too young to have settled features. Notes to 95 A. L. R. 320. The attention of the jury was not in any manner directed, nor did the commonwealth make reference, to the child.

In Miller v. Com., 270 Ky. 378, 109 S. W. (2d) 841, 847, a seduction under promise of marriage case, we reviewed a number of "child exhibition" cases, and quoted what is perhaps a sound rule from 40 A. L. R. 144:

"While there are loose statements to be found in some cases which seem to indicate that the writers of the opinion regarded the mere presence of a child in court, when its paternity was in issue, as prejudicial [see cases cited], the courts with one accord hold that, unless the child is shown to the jury to excite the prejudice of the jury against its alleged father, it should not be excluded from the court room or from its mother's arms while she is testify-

ing; at least, providing no 'informal exhibit' is thereby made of it, as by reference of counsel to its appearance * * *.'' See also, James v. Com., 190 Ky. 458, 227 S. W. 562.

We have given this case our most careful consideration, and having done so, we are compelled to hold that no error was committed to the prejudice of the substantial right of appellant.

Judgment affirmed.