[Civ. No. 15143. Second Dist., Div. Two. May 27, 1946.]

CAROL ANN BERRY, a Minor, etc., Appellant, v. CHARLES SPENCER CHAPLIN, Respondent.

670

Joseph Scott, Cuthbert J. Scott, A. H. Risse and J. Howard Ziemann for Appellant.

Wright & Millikan, Loyd Wright, Charles E. Millikan and S. Earl Wright for Respondent.

WILSON, J.—This is plaintiff's appeal from portions of the judgment in the same filiation proceeding that is the subject of an opinion filed concurrently herewith (*ante,* p. 652 [169 P.2d 442]) in which defendant's appeal from parts of said judgment is determined. On the ground that the amounts are inadequate she has appealed from those portions of the judgment awarding (1) the sum of $75 per week for her support and maintenance and (2) the sum of $5,000 to her attorneys for their services. Reference is made to said opinion for a statement of facts. Such additional matters as are necessary to a consideration of plaintiff's appeal will be stated herein.

Immediately upon the rendition of the verdict of the jury finding that defendant was the father of plaintiff the court, without a jury, proceeded with a hearing for the purpose of determining the amounts that should be awarded for plaintiff's maintenance and support and for her attorneys' fees. At the conclusion of the hearing the court adjudged that the sums above mentioned should be paid by defendant.

1. *Did the court err in not awarding a greater amount than $75 per week for plaintiff's support and maintenance?* The stipulation discussed in our opinion on defendant's appeal did not contain any agreement as to the amount to be paid by

defendant for plaintiff's maintenance and support in the event that he should be found to be her father. Hence the amount to be allowed therefor was within the discretion of the court, and the possibility suggested by plaintiff that the court might have deemed itself bound by the stipulation is not present. The only question is whether discretion was exercised so arbitrarily in fixing the amount that this court will interfere with the order.

Section 196a of the Civil Code provides that the father as well as the mother of an illegitimate child must give him support and education suitable to his circumstances, and that in an action brought on behalf of the minor the court shall have power to order and enforce performance of the parental obligation the same as under section 137 and other sections of the Civil Code. Section 137 relates to orders in divorce actions for the support of a wife and child and provides that any such order may be varied, altered, or revoked at the discretion of the court.

The following rules of law are applicable to this proceeding: An order for the support and education of an illegitimate child is to be made by the court in the exercise of its sound discretion, considering the needs of the child and the financial ability of the father. There may be room for a difference of opinion in regard to the amount which should have been awarded, but an appellate court will not interfere with the order of the trial court unless, as a matter of law, the latter has abused its discretion, and all reasonable inferences from the evidence which will uphold the order will be indulged. (*Brockmiller* v. *Brockmiller,* 57 Cal.App.2d 623, 625 [135 P.2d 184].) The father's duty to support the child does not end with the furnishing of mere necessities if he is able to afford more. (*Bailey* v. *Superior Court,* 215 Cal. 548, 555 [11 P.2d 865].) In a legal sense discretion is abused whenever in the exercise of its discretion the court exceeds the bounds of reason, all of the circumstances before it being considered. (*Makzoume* v. *Makzoume,* 50 Cal.App.2d 229, 231 [123 P.2d 72].) An abuse of discretion is never presumed but must be affirmatively established by the party complaining of the provisions of the order. (*Wilder* v. *Wilder,* 214 Cal. 783, 785 [7 P.2d 1032] ; *Kaiser* v. *Hancock,* 25 Cal.App. 323, 328 [143 P. 614] ; *Lynch* v. *Lynch,* 69 Cal. App. 66, 71 [230 P. 462].) The burden is on the party complaining of the order to establish an abuse of discretion, and

unless a clear case of abuse is shown and unless there has been a miscarriage of justice an appellate court will not substitute its opinion and thereby divest the trial court of its discretionary power. (*Hale* v. *Hale,* 55 Cal.App.2d 879, 883 [132 P.2d 67]; *Sharpe* v. *Sharpe,* 55 Cal.App.2d 262, 265 [130 P.2d 462].)

The complaint alleges that defendant has a vast amount of real and personal property, including extensive holdings in the motion picture industry, sufficient to pay plaintiff the amount of any order or judgment in this action. By failing to deny, defendant admitted the truth of the allegation, but how "extensive" or "vast" his holdings may be does not appear from the pleadings or from the evidence.

Preceding the introduction of evidence plaintiff's counsel expressed a desire to examine defendant, his auditor and his books for the purpose of determining his resources, or to obtain a statement from his attorney concerning defendant's ability to care for the child "from the standpoint of a man of enormous wealth, not just a mere livelihood." Defendant's counsel offered to stipulate that he "has the financial ability to respond to any reasonable order made by this court suitable to the circumstances of the plaintiff." The proffered stipulation does not appear to have been accepted by counsel for plaintiff.

During the argument repeated references were made by plaintiff's counsel to her necessities and to the purported wealth of defendant. At one point the court stated: "The court is interested in hearing evidence on both subjects of the necessities and cost of necessities for the support and maintenance of the plaintiff minor, as well as the state and condition of wealth of the defendant as a means of ascertaining what is a reasonable amount to be allowed both for such support and counsel fees in consideration of all the circumstances of the case." Counsel were thus explicitly advised that the court was awaiting evidence upon which to base its order.

We have searched the record for evidence on both subjects, plaintiff's necessities and defendant's ability to respond, and find none except that of the guardian *ad litem* who was the only witness examined. He testified that in his opinion plaintiff should be awarded between $1,000 and $1,500 per month. As the basis of his estimate he stated that in his opinion defendant was worth "well in excess of one million dollars," and that it was his "understanding" that defendant's chil-

dren had been educated in Europe and had had other unusual social advantages. A motion to strike his answer was denied, the trial judge stating that it "would be given such weight by the court as an opinion under those circumstances warranted." This is definite and clear-cut language attesting that the court did not place any value on the opinion of the witness and was a second invitation to counsel to produce factual evidence. The suggestion was unheeded. The record is devoid of facts pertinent to this material feature of the case.

With reference to the needs of plaintiff the guardian *ad litem* testified that he had paid $150 per month as rent for the house in which the child, its mother, and its grandmother resided and that he had not been able to find a suitable house for less rent; that neither the mother nor the grandmother was employed and neither contributed to the support of the household. He had no knowledge concerning the child's wardrobe except from hearsay. The only checks he had drawn as guardian *ad litem* were for rent, utilities, and food, the amounts not stated.*

It is conceded that unless a nurse should be engaged the child must be cared for by either the mother or the grandmother. The maintenance of one of them is a necessary part of the support of the child, but defendant cannot be required to provide food, housing, and clothing for both the mother and the grandmother unless it is made to appear by proof of facts that the child's care requires the attendance of both. There was no evidence concerning the amounts necessary for the maintenance of the child and its mother except as to the amount of rent paid for their home. The guardian *ad litem* testified that he prepared an accounting for plaintiff's grandmother during the period of her guardianship from information furnished by her. The only specific items concerning which evidence was given by him consisted of payments totaling slightly more than $600 made by the grandmother to several department stores, one amount being $403.13. The witness had no knowledge as to whether or not the expenditures

---

*In this connection the following questions were asked and answers given in his cross-examination: "Q. So, not only the child but Mrs. Gertrude E. Berry and Miss Joan Berry have lived on the sum that was paid to you through our office, is that correct? A. No, that is not correct. Q. What is correct? A. Well, they have certain other obligations that haven't been paid. Q. Are those obligations of the child or obligations of Miss Berry and Mrs. Berry? A. Miss Berry and Mrs. Berry. Q. Personal obligations? A. Personal obligations of their own."

were made for merchandise purchased for the minor.

In *James* v. *Commonwealth,* 190 Ky. 458 [227 S.W. 562, 563], it is held that in bastardy proceedings evidence is admissible to show the amount of property possessed by the mother of the child and by the defendant, and that the child is entitled to a contribution from its father of such sum as is commensurate with his ability to pay; and in *State* v. *Reese,* 43 Utah 447 [135 P. 270, 278], that an award in such a proceeding should be in accordance with the circumstances of the case and that the wealth of the accused, his ability to earn money, the lack of means of the mother and the health and condition of both should be taken into consideration. The case of *Kyne* v. *Kyne,* 70 Cal.App.2d 80, 83 [160 P.2d 910], states the same rule with which we are in accord. But there is no evidence in this action except that of the guardian *ad litem* heretofore referred to concerning defendant's ability to pay, and that, as we have said, was merely an expression of his opinion without a basis of fact.

The record is silent concerning defendant's standard and condition of living, his position in society, the value of his property, the encumbrances thereon, his income, and his indebtedness, all of which are elements that must be considered in determining the amount that he should be required to pay. Plaintiff's counsel did not, as was their right, call upon him to testify concerning those matters. Since the burden of proof rested upon plaintiff to prove defendant's ability to pay as fully as it did to establish parenthood, it was not incumbent upon him to appear voluntarily and disclose facts concerning his property and income. As in any other lawsuit defendant was privileged to await the introduction of evidence by plaintiff and then to present his defense.

The trial court could not, nor can we, either indulge a presumption as to the style of living of defendant or of any other person or group of persons, or take judicial notice thereof. The scope of judicial notice has been amplified by the courts far beyond the matters enumerated in section 1875 of the Code of Civil Procedure, but its frontiers have not been so expanded as to encompass night club gossip and stories appearing in newspapers and magazines within the domain of proof of wealth or of any other necessary fact. How many citizens, prominent in business, social, and civic affairs, have been reputed to be possessed of vast resources

but have been adjudicated bankrupts without assets, or whose estates after death have been entirely consumed in the payment of indebtednesses of which their closest associates have had no knowledge! A pretentious style of living is not necessarily indicative of great wealth. It may be maintained from comparatively meager means to satisfy a vainglorious desire of a person to appear to be what he is not; and too, it may be rendered possible by funds that are secured through devious ways and that can be acquired only by reason of the impression made by the "front" that such funds are able to provide.

The comprehensive statement that courts are presumed to know what everyone else knows is not wholly accurate. Rather should it be said that courts may take judicial notice of facts that may be regarded as forming a part of the common knowledge of every person of ordinary understanding and intelligence. (31 C.J.S. 510.) To this should be added a second test: Is it certain and indisputable? (*Varcoe* v. *Lee,* 180 Cal. 338, 346 [181 P. 223].) Judicial notice is not taken of facts which the court cannot know without resort to proof. (31 C.J.S. 512.) Measured by these rules the trial court was left in ignorance concerning the financial condition of defendant.

The stipulation which was signed on June 9, 1943, provided that defendant should pay to the guardian *ad litem* forthwith the sum of $2,500 together with the sum of $100 each week until the trial, for medical care and for the living expenses of Miss Berry and the infant plaintiff; also the sum of $4,600 for expenses connected with Miss Berry's confinement, $500 of which was to be paid before the birth of the child, $1,000 at birth, $500 per month for four months after birth, and $1,100 after the child had been submitted to physicians for blood tests. All of said payments were made by defendant.

In determining the amount to be allowed for plaintiff's support the court may have taken into consideration the amounts paid as provided for in the stipulation and the fact that no evidence was offered as to the purpose for which the money was expended. The court having before it nothing more than the evidence above outlined, made the award which seemed to it under the circumstances to be meet and proper. By reason of the rules of law hereinabove stated and of the dearth of evidence we are not disposed to interfere

with the conclusion reached. (See *Gambetta* v. *Gambetta*, 30 Cal.App. 261, 263 [157 P. 1141] ; *Whiteside* v. *Wilkerson*, 211 Cal. 752 [297 P. 15].)

Section 137 of the Civil Code provides that an order for support may be varied or altered at the discretion of the court. The judgment provided that the sum of $75 per week should be paid during the minority of plaintiff "or until the further order of the court," thus reserving continuing jurisdiction to increase or diminish the amount, giving consideration to possible future changes in the needs of plaintiff and the financial condition of defendant. In *Kyne* v. *Kyne*, 38 Cal.App.2d 122 [100 P.2d 806], the court sustained a judgment for the support of an illegitimate child. Upon a hearing had six years later in the same action it was proved (1) that by reason of the age of the child its needs were greater than when the judgment was rendered, and (2) that the income of the defendant was much larger. Based on those facts the court increased the amount and the order was sustained. (*Kyne* v. *Kyne*, 70 Cal.App.2d 80 [160 P.2d 910].)

In the instant case plaintiff may apply at any time, and from time to time, for an increased award, and at the hearing of any such application she will have an opportunity to offer more extensive evidence both as to her necessities and as to defendant's financial ability than that presented at the previous hearing.

2. *Was the court bound by the stipulation as to the amount of fees to be allowed plaintiff's attorneys?* With reference to attorneys' fees the stipulation provided as follows: "The sum of Five Thousand Dollars ($5,000.00) payable forthwith on account of attorneys' fees for services rendered by plaintiff's attorneys of record in this action and for services rendered to said Joan Berry prior to the filing of this action. In that connection, it is further stipulated that when and if the above entitled action shall be tried, the defendant shall pay upon the conclusion of said trial and entry of judgment in this action, a further sum of Five Thousand Dollars ($5,-000.00) as plaintiff's attorneys' fees, which said sum shall be in full for all services rendered by any attorneys for plaintiff in the above entitled action."

In our decision on defendant's appeal (*ante*, p. 652 [169 P.2d 442]) we held the stipulation to be void by reason of its provisions that attempted to make the blood tests con-

clusive and to deprive the court of jurisdiction to determine the parentage of plaintiff after a trial had in the ordinary course of legal procedure, and that the order purporting to approve the stipulation was likewise void.

Section 196a of the Civil Code empowers the court to make an order for the support of an illegitimate child in such amount as the evidence shows to be necessary and proper. ▪ Since legal services performed on behalf of a child in a filiation proceeding are a part of the child's right of support (*Andrade* v. *Newhouse,* 54 Cal.App.2d 339, 344 [128 P.2d 927]) the power of the court to award attorneys' fees is no less than its power to award support to the minor. Consequently, in this case such amount may have been and may yet be allowed as is commensurate with the services performed by plaintiff's attorneys unhampered by the stipulation.

Defendant maintains that plaintiff's present counsel are bound by the stipulation limiting the amount of attorneys' fees to the same extent as if they had been the original attorneys in the case, citing *Smith* v. *Whittier,* 95 Cal. 279 [30 P. 529]. That case held that an attorney who was substituted into an action was bound by a stipulation made by his predecessors relating to a procedural matter—the use of a deposition at the trial. No authorities have been furnished in support of defendant's assertion that the court is confined to the amount set forth in the stipulation. Defendant also cites the cases of *Richardson* v. *Musser,* 54 Cal. 196, and *Moffitt* v. *Jordan,* 127 Cal. 628 [60 P. 175], relating to the power of the court to relieve a party from a stipulation upon motion where it was entered into through inadvertence, mistake, or excusable neglect. Those decisions have no application to the case at bar. Since the stipulation was and is void a motion to be relieved from its effect was unnecessary.

3. *Is the sum of $5,000 a reasonable and adequate amount to be allowed as plaintiff's attorneys' fees?* ▪ Since the stipulation purporting to fix the attorneys' fees is void, the amount that defendant may be required to pay is within the sound discretion of the court. The question now is whether the amount fixed by the judgment is so small that this court can say that the trial court abused its discretion in making the allowance.

The compensation of an attorney does not lie in the economic law of supply and demand like the fluctuating price of wheat

and potatoes. Among the factors to be considered in determining what constitutes a reasonable compensation for an attorney who has rendered services in connection with a legal proceeding are the nature of the litigation, its difficulty, the amount involved, the skill required and the skill employed in handling the litigation, the attention given, the success of the attorney's efforts, his learning, his age, and his experience in the particular type of work demanded (*City of Los Angeles* v. *Los Angeles-Inyo Farms Co.*, 134 Cal.App. 268, 276 [25 P.2d 224]) ; the intricacies and importance of the litigation, the labor and the necessity for skilled legal training and ability in trying the cause, and the time consumed. (*Palm Springs etc. Co.* v. *Kieberk Corp.*, 46 Cal.App.2d 234, 241 [115 P.2d 548] ; *Collins* v. *Welsh*, 2 Cal.App.2d 103, 110 [37 P.2d 505].)

When plaintiff's present counsel took charge of the case they were faced with the stipulation to which reference has been made in this opinion and in our decision on defendant's appeal. If the stipulation were valid, or if invalid but uncontested, plaintiff was out of court by reason of the physicians' report on the blood tests. The first problem to which counsels' attention was of necessity directed was whether the stipulation was valid, since by its terms as written plaintiff was deprived of her right of support from defendant without a trial in a court of law and without any showing excepting the unverified medical opinion which had already been rendered. Her privilege of cross-examination of the physicians as to the method and accuracy of their tests had been waived. This question was before the court on defendant's motion to dismiss with prejudice when the substitution of attorneys was made, and a contest of the motion was immediate.

 The evidence detailing the legal services performed was given by one of counsel for plaintiff and is uncontradicted. The motion to dismiss was argued at length and was denied by the trial court. Defendant then filed in the District Court of Appeal a petition for a writ of mandate seeking to compel the superior court to dismiss the action. Plaintiff's attorneys appeared with the county counsel, who represented the court, in opposition to the petition, briefs were filed, and the petition was denied. Defendant filed a petition in the Supreme Court for a similar writ. Conferences were had by plaintiff's attorneys with the county counsel, a

printed brief was prepared and filed, and the writ was denied. The case went to trial before a jury. The trial continued for three weeks, with recesses for two days occasioned by the absence of witnesses and by the holiday season. The jury disagreed and the case was reset for trial. In the meantime defendant had served a notice of intention to take a deposition in New York upon written interrogatories. Counsel for plaintiff prepared cross-interrogatories, consulted with counsel for defendant, and appeared in court for the issuance of the commission to take the deposition. The second trial of the action consumed approximately two weeks. Investigators were employed to obtain evidence; their reports were examined; witnesses were interviewed; research was made for applicable law; instructions to the jury were prepared for both trials. A criminal case which in some manner involved the parties to this proceeding was tried in the United States District Court. One of the attorneys from the office of plaintiff's counsel sat through the trial and made notes and memoranda of the entire testimony. Counsel also studied the complete transcript of said trial in search of evidence pertinent to plaintiff's cause. Conferences were had with Miss Berry lasting for several hours almost daily and over a long period of time. Her relations with defendant having extended over a considerable period, it was necessary that all facts be ascertained and analyzed by counsel and that the admissible evidence be winnowed from the inadmissible. Counsel labored on the case not only during business days but on many nights, Saturdays and Sundays including the holiday season. One of counsel spent several weeks on the case without conferring with any other clients of the office. The attorney who gave the evidence concerning the time and labor consumed testified that in his opinion $50,000 would be a reasonable fee for the services performed.

The court was not bound by the opinion of counsel as to the value of the services performed but might have allowed such amount as would reasonably compensate the attorneys for the time, the labor, and the skill employed in the preparation for trial and in the conduct of the two trials, and in collateral matters applicable to the case, including attendance in the federal court and resistance of the petitions in the District Court of Appeal and the Supreme Court. It is clear from the above outline of the labor performed in resuscitating an action

which appeared to be dead when they took charge of it and in pressing it to a successful conclusion that the sum of $5,000 is not a reasonable or adequate fee. The record does not indicate whether the court deemed itself to be limited to the amount stated in the stipulation or whether the sum of $5,000 was considered a reasonable fee disregarding the stipulation. The trial judge had had a long experience both as a practitioner at the bar and as a judge of the municipal and of the superior courts and from that experience was capable of forming an estimate of the value of legal services. It seems incredible that he would have considered such a small amount to be a reasonable compensation for the services performed, and we are impelled to draw the inference that he considered himself bound by the stipulation.

Giving consideration to the factors that must be weighed in determining a reasonable attorneys' fee, the amount allowed is not sufficient compensation for the services performed by plaintiff's counsel and for the result achieved. Their work was executed with the thoroughness that characterizes skilled attorneys. Important and unusual questions of law were involved. As the result of their efforts the outcome of the case is that plaintiff's parentage does not remain anonymous, and instead of suffering defeat by reason of the stipulation which was entered into prior to her birth she has had preserved to her the right of support by defendant during her minority.

That portion of the judgment relating to the award of support to plaintiff is affirmed; that portion fixing the fee of plaintiff's attorneys is reversed with directions to the trial court to disregard the stipulation and to determine the amount of the attorneys' fees in accordance with the evidence introduced at the hearing and such additional evidence, if any, as may be offered; plaintiff-appellant to recover her costs of appeal.

Moore, P. J., and McComb, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 24, 1946. Traynor, J., and Schauer, J., voted for a hearing.